JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Betim Ymeri, et al.,

           Plaintiffs,

      v.

Life Insurance Company of North

America, et al.

           Defendants.

2:21-cv-01491-VAP-JPRx

**Order GRANTING Motion to Remand (Dkt. 18).**

On March 19, 2021, Plaintiffs Betim Ymeri, Naser Sahiti, and Burim Haliti filed a Motion to Remand ("Motion").  (Mot., Dkt. 18.)  Defendants Life Insurance Company of North America, Eric Feldman, and Brianna Collins filed their Opposition to the Motion on March 29, 2021 (Opp'n, Dkt. 22), and Plaintiffs filed their Reply on April 5, 2021 (Reply, Dkt. 25).

The Court finds this matter appropriate for resolution without hearing pursuant to Local Rule 7-15.  After considering all papers filed in connection to the Motion, the Court GRANTS the Motion.

1

United States District Court
Central District of California

# I. BACKGROUND

Plaintiffs Betim Ymeri, Naser Sahiti, and Burim Haliti ("Plaintiffs") are residents of the Republic of Kosovo.  (Compl., Dkt. 1-1 ¶¶ 5–7.)  From 2012 through 2017, Plaintiffs performed work in Afghanistan in connection with American military efforts for Global Sourcing Solutions ("GSS") and Defendants AECOM and AC First LLC (together, "AECOM Defendants").  (*Id.* ¶ 21.)  GSS is based in the Cayman Islands, and the AECOM Defendants are incorporated in the United States.  (*Id.* ¶¶ 11, 12, 30.)  Plaintiffs allege that as part of their employment contracts, the AECOM Defendants represented that Plaintiffs would receive long-term disability ("LTD") insurance coverage for on-the job injuries.[1]  (*Id.* ¶¶ 23–24.)  The LTD policy was to be issued and administered by Defendant Life Insurance Company of North America ("LINA"), and monthly payments for LTD insurance were thereafter deducted from Plaintiffs' payroll.  (*Id.* ¶¶ 24–25.)

Plaintiffs allegedly suffered various injuries during their employment in Afghanistan and submitted claims to LINA for disability coverage.  (*Id.* ¶¶ 2, 22, 26.)  After review, LINA's claim adjusters denied or closed the claims claiming Plaintiffs were not eligible for coverage under the LTD policy.  (*Id.* ¶¶ 3, 26.)  Plaintiffs contend that either the AECOM Defendants failed to obtain the promised LTD policy or LINA and its insurance adjusters wrongfully denied coverage.  (*Id.* ¶ 4.)

Plaintiffs accordingly brought suit in the Superior Court of California, County of Los Angeles.  Defendants removed the action on the basis of federal

---

[1] Plaintiffs allege their contracts were through GSS on behalf of the AECOM Defendants. (Compl. ¶ 23.)

2

1   question jurisdiction pursuant to ERISA.  (*See* Dkt. 1.)  Plaintiffs now seek to

2   remand the action to the Superior Court.[2]

3

4                     **II.    LEGAL STANDARD**

5        A defendant may remove any civil action from state court to federal court if

6   the federal court has original jurisdiction.  28 U.S.C. § 1441(a).  "The removal

7   statute is strictly construed, and any doubt about the right of removal requires

8   resolution in favor of remand."  *Moore-Thomas v. Alaska Airlines, Inc*., 553 F.3d

9   1241, 1244 (9th Cir. 2009) (citing *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir.

10  1992)).  The presumption against removal means that "the defendant always has the

11  burden of establishing that removal is proper."  *Id.*  Moreover, the district court

12  must remand any case previously removed from a state court "if at any time before

13  final judgment it appears that the district court lacks subject matter jurisdiction."  28

14  U.S.C. § 1447(c).

15

16                     **III.    DISCUSSION**

17       Generally, "[a] cause of action arises under federal law only when the

18  plaintiff's well-pleaded complaint raises issues of federal law."  *Metropolitan Life*

19  *Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).  Defendants rely on an exception to this

20  general rule, which applies when a complaint alleges state-law causes of action that

21  could have been brought under § 502(a)(1)(B) of ERISA, 29 U.S.C. §

22  1132(a)(1)(B), and are thus "completely preempted" by federal law.  *See Marin*

23  *Gen. Hosp. v. Modesto & Empire Traction Co*., 581 F.3d 941, 945 (9th Cir. 2009).

24

25  _____

26  [2] Defendants filed a Request for Judicial Notice in connection with their Opposition. (Dkt. 23.)   As the Court does not rely on the underlying documents in this Order, the Request is denied as moot.

That section provides a participant or beneficiary a civil cause of action in connection with an employee benefit plan, specifically an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  In their Motion, Plaintiffs raise a threshold issue as to the extraterritorial application of § 502(a)(1)(B) of ERISA.  Specifically, Plaintiffs contend that the provision does not extend to foreign nationals employed abroad and thus cannot preempt their state law claims.  (*See* Mot. at 6–15.)

Under Supreme Court precedent, courts apply a two-step framework for assessing the extraterritorial application of a statute:

> At the first step, we ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially. We must ask this question regardless of whether the statute in question regulates conduct, affords relief, or merely confers jurisdiction. If the statute is not extraterritorial, then at the second step we determine whether the case involves a domestic application of the statute, and we do this by looking to the statute's "focus." If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.

*RJR Nabisco, Inc. v. Eur. Cmty.*, --- U.S. ----, 136 S. Ct. 2090, 2101 (2016).

As the parties dispute the proper outcome at both steps of the analysis, the Court addresses each in turn.

**A.   Step One: Presumption Against Extraterritoriality**

As stated above, the Court will look for a "clear, affirmative indication" that Congress intended to give ERISA, specifically § 502(a)(1)(B), extraterritorial effect.  "When a statute gives no clear indication of an extraterritorial application, it has none."  *Morrison v. Nat'l Australia Bank Ltd*., 561 U.S. 247, 255 (2010).

Defendants rely on ERISA's "foreign plan exemption" to support the statute's extraterritorial effect.  (Opp'n at 10.)  Although ERISA broadly encompasses "any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce or in any industry or activity affecting commerce,"  it exempts from its governance plans "maintained outside of the United States primarily for the benefit of persons substantially all of whom are nonresident aliens."  29 U.S.C. §§ 1003(a)(1)–(b)(4).  Defendants contend ERISA must therefore apply to "domestic plans covering foreign participants," as in the present case, or else the exemption would be superfluous.  (Opp'n at 10.)

The argument that the foreign plan exemption supports extending ERISA's civil cause of action to non-residents employed abroad, however, has been rejected twice before.  In *In re Reliance Standard Life Ins. Co*., 386 F. Supp. 3d 505, 510–11 (E.D. Pa. 2019) ("*Reliance*"), the court rejected the defendants' interpretation of the foreign plan exemption as it was based on the "mistaken premise that extraterritoriality can be implied" when in fact the Supreme Court requires "an affirmative intention of Congress clearly expressed."  It construed the exemption as a narrow indication of "what is *not* explicitly considered an ERISA-covered plan" and determined it would be "mere speculation to conclude that this exemption means that foreign nationals working in a foreign country are within the scope of ERISA."  *Id.*  In a related decision, *Bajrami v. Reliance Standard Life Ins. Co*., 334

5

F. Supp. 3d 659, 664 (E.D. Pa. 2018), the court rejected the same argument on the ground that "the exemption concerns the plan itself, not who may bring suit." The court reasoned that the exemption nowhere states that foreign nationals employed abroad can bring their claims under ERISA nor does it logically require that conclusion. *Id.* The exemption could alternately be construed "as not limiting the application of ERISA solely to [a plan covering] United States citizens or workers within the United States, but it also could be directed, for example, toward a foreign [maintained] plan that includes a few American citizens working abroad." *Id.*

That it is the civil cause of action available under § 502(a)(1)(B) that Defendants seek to extend extraterritorially is notable. Even where substantive provisions of a statute apply extraterritorially, a provision providing a derivative civil cause of action to individuals is not given *de facto* extraterritorial scope in light of the high risk of international friction. *RJR Nabisco*, 136 S.Ct. at 2106–08.[3] Defendants provide no evidence that § 502(a)(1)(B)'s civil action for participants of benefit plans reaches foreign nationals employed abroad. The Court recognizes that the statutory definition of "participants" repeatedly employs the term "any," which indicates its broad scope. *See* 29 U.S.C. § 1002(7) (a participant is "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan"). The use of that term alone, however, cannot support § 502(a)(1)(B)'s *extraterritorial* scope. *Kiobel v. Royal Dutch Petroleum Co*., 569 U.S. 108, 118 (2013) ("[I]t is well established that generic terms like 'any' or 'every' do not rebut the presumption against

_____

[3] Defendants contend that no such risk is present here as Plaintiffs seek to apply California law. The potential for a risk of conflict between a domestic statute and foreign laws, however, is not altered by the circumstances of an individual case.

United States District Court
Central District of California

extraterritoriality.").  And for the reasons explained by the *Bajrami* court, the foreign plan exemption relied on by Defendants also does not support the extraterritorial application sought here.  *See also Morrison*, 561 U.S. at 264 ("[P]ossible interpretations of statutory language do not override the presumption against extraterritoriality.")  In short, what is missing is an "affirmative intention of the Congress clearly expressed."  *Id.* at 255.  The Court will accordingly apply the presumption against extraterritoriality.[4]

**B.   Step Two: Domestic Application Exception**

Having determined the presumption applies, the Court next considers if this litigation presents a "domestic application" of ERISA such that extraterritoriality concerns are not implicated.  As stated above, the crux of the analysis is whether "the conduct relevant to the statute's focus occurred in the United States" even if other conduct occurred abroad.  *RJR Nabisco*, 136 S. Ct. at 2101.  As the provision

---

[4] Defendants urge the Court to consider statutory context, specifically, ERISA's broad preemption provision, as additional support for its extraterritorial effect.  (Opp'n at 12.)  The Court is unconvinced that congressional intent to preempt state laws can serve as a substitute for the requisite intent to extend § 502(a)(1)(B) extraterritorially.

Defendants also contend that uniformity concerns require the extension of ERISA coverage to Plaintiffs because their benefit plan is governed by ERISA.  (Opp'n at 5–6.)  Defendants rely on the Supreme Court's decision in *Yates v. Hendon*, 541 U.S. 1 (2004) but have drawn an overbroad conclusion from it.  At issue in *Yates* was not the extraterritorial application of ERISA, but whether a working owner of a business could qualify as a "participant" in a benefit plan.  *Id.* at 11.  The Supreme Court answered in the affirmative.  This holding was supported by a textual analysis of ERISA.  *Id.* at 12 ("ERISA's text contains multiple indications that Congress intended working owners to qualify as plan participants.")  Defendants overlook this textual analysis and focus instead on the Supreme Court's statement that its ruling "also avoids the anomaly that the same plan will be controlled by discrete regimes: federal-law governance for the nonowner employees; state-law governance for the working owner."  *Id.* at 17.  There is nothing to suggest that the Supreme Court intended this statement to transform into the blanket rule Defendants advance, particularly where extraterritorial concerns are implicated.

which Defendants seek to apply extraterritorially is § 502(a)(1)(B), it thus follows that the appropriate question under this step is whether the allegations of the Complaint present a domestic application of that section or a foreign one.

Defendants contend that the application of ERISA here is domestic because the benefit plan at issue was created, maintained, funded, and administered in the United States.  (Opp'n at 4– 5, 8–9; Dkts. 22-1, 22-2.)  Defendants rely on the congressional declaration of policy, codified at 29 U.S.C. § 1001, which states, *inter alia*, that ERISA was enacted because Congress found it in the interest of employees that "disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of [employee benefit] plans."  29 U.S.C. § 1001(a).  Looking at this provision and relevant legislative history, the Supreme Court has stated that "[t]he focus of [ERISA] . . . is on the administrative integrity of benefit plans."  *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 15–16 (1987).

Plaintiffs argue that the portion of *Fort Halifax* cited by Defendants does not control this Court's analysis because that case concerned preemption of a state law and the Supreme Court did not apply the focus inquiry under the extraterritoriality framework.  (Reply at 5–7.)  Plaintiffs' arguments are well taken.  The focus inquiry under step two of the extraterritoriality analysis is specific and directed towards § 502(a)(1)(B).  While the analysis considers provisions that work in tandem with the statutory provision at issue, the ultimate question is as to the "object of the statute's solicitude."  *WesternGeco LLC v. ION Geophysical Corp*., --- U.S. ----, 138 S.Ct. 2129, 2137 (2018).  This can include the conduct that statute

8

seeks to regulate as well as the parties and interests it seeks to protect or vindicate. *Id.*

Plaintiffs contend § 502(a)(1)(B) focuses on the participant and his or her claim for benefits, and hence the relevant conduct is that underlying their claims. (Reply at 2–7.)  The Court agrees with Plaintiffs.  *See* 29 U.S.C. § 1132(a)(1)(B) (a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan").[5]  This approach is also consistent with the presumption against extraterritoriality.  As explained by the court in *Chong v. InFocus Corp.*, adopting an approach that singularly focuses on the location of the plan administration would render "territorial borders, as well as the citizenship and location of the employees . . . irrelevant" and "eviscerate the presumption against extraterritorial application."  No. CV–08–500–ST, 2008 WL 5205968, at *5 (D. Or. Oct. 24, 2008).  The Supreme Court has cautioned that the presumption against extraterritorial application is not such a "a craven watchdog" that it "retreat[s] to its kennel whenever some domestic activity is involved in the case."  *Morrison*, 561 U.S. at 266.

Here, Plaintiffs are residents of Kosovo, who were employed in Afghanistan, contracted for disability benefits through a Cayman Islands intermediary, suffered injuries in connection with their employment in Afghanistan, and filed their claims from abroad.  Hence, Plaintiffs' claims accrued, and relevant conduct occurred, in

---

[5] Other than the congressional declaration of policy, discussed above, Defendants do not cite any "tandem provisions" that lend additional context to § 502(a)(1)(B).  *See WesternGeco*, 138 S.Ct. at 2137.

United States District Court
Central District of California

the territory of other sovereigns.  This conclusion aligns with that of other district courts.  "[W]ithin the last four decades of ERISA's enactment, no district court has held that a foreign national working abroad can bring a claim under ERISA." *Reliance*, 386 F. Supp. 3d at 511 (citing *Bajrami*, 334 F. Supp. 3d at 663–64; *Chong,* 2008 WL 5205968, at *4, 6; *Maurais v. Snyder*, No. 00-2133, 2000 WL 1368024, at *2 (E.D. Pa. Sept. 14, 2000)).  The *Reliance* and *Bajrami* decisions considered facts strikingly similar to the present case and are thus particularly persuasive.  Those plaintiffs were citizens of Kosovo employed by AECOM and GSS in Afghanistan.  *Bajrami*, 334 F. Supp. 3d at 660–61; *Reliance*, 386 F. Supp. 3d at 507.  They also suffered injuries abroad and submitted claims for LTD benefits offered to them by their employers that were ultimately denied by the insurer.  *Id*. Both decisions concluded that although the administration of the relevant benefit plan occurred domestically, foreign events underlay the employees' benefit claims. *Bajrami*, 334 F. Supp. 3d at 663–64; *Reliance*, 386 F. Supp. 3d at 507, 511.  The facts of the present litigation do not merit a contrary conclusion.

Accordingly, the Court finds that the Complaint does not present a permissible domestic application of ERISA.  As Plaintiffs could not bring their benefit claims pursuant to § 502(a)(1)(B), ERISA does not "completely preempt" their state law claims.  Removal was therefore inappropriate.

/ / /

/ / /

/ / /

10

# IV.   CONCLUSION

For the reasons stated herein, the Court GRANTS the Motion to Remand. The Court accordingly declines to rule on Defendants' pending Motion to Dismiss.

**IT IS SO ORDERED.**

Dated:   4/20/21

Virginia A. Phillips
United States District Judge

United States District Court
Central District of California

11